NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

MARLA K. MANIKAS,                          :
                                           :
          Plaintiff,                       :        Civ. No. 08-3308 (AET)
                                           :
     v.                                    :
                                           :        **MEMORANDUM & ORDER**
MICHAEL ASTRUE,                            :
COMMISSIONER OF SOCIAL                     :
SECURITY,                                  :
                                           :
          Defendant.                       :
_____:

THOMPSON, U.S.D.J.

     This matter is before the Court on Plaintiff Marla K. Manikas' appeal of a final

administrative decision by Defendant Commissioner of the Social Security Administration

("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under the

Social Security Act.  This Court has jurisdiction to decide this matter pursuant to 42 U.S.C. §§

405(g).  For the reasons set forth below, the decision of the Commissioner is affirmed.

BACKGROUND

     Plaintiff is a forty-two-year-old college graduate with an online master's degree in

business.  (R. 417-18.)[1]  Plaintiff is widowed and lives with her young daughter.  (R. 419.)  Her

past work experience includes employment as a records clerk, substitute teacher, para-professional

for special needs children, and real estate agent.  (R. 423-24.)  On June 2, 2004, Plaintiff filed an

---

[1] Page citations are to the administrative record filed by the Commissioner as part of his
answer.

-1-

application for DIB alleging an inability to work due to affective/mood disorders and disorders of the back.  (R. 29-30, 60.)  The Commissioner denied the claim both initially and on reconsideration.  (R. 31-35, 38-40.)  Plaintiff obtained a hearing before Administrative Law Judge ("ALJ") Joseph A. Pachnowski on January 20, 2006.  (R. 52, 398.)  On April 28, 2006, Judge Pachnowski concluded Plaintiff was not under a "disability" as defined in the Social Security Act.  (R. 311-19.)  Plaintiff appealed and the Appeals Council remanded the case on January 19, 2007 with specific instructions for the ALJ to further consider and explain certain findings.  (R.321-23.)  Plaintiff obtained a hearing before ALJ Daniel W. Shoemaker, Jr., on May 14, 2007.  (R. 343-46, 415.)  On July 31, 2007, Judge Shoemaker concluded Plaintiff was not under a "disability" during the period for which she claimed benefits.  (R. 18-26.)

    At the January 20, 2006 hearing, Plaintiff testified she was injured in a car accident on January 15, 2003.  (R. 401-02.)  She testified she went on maternity leave on November 18, 2003, and that she has been unable to work since that date due to physical and mental impairments from the injuries sustained in the car accident.  (R. 401.)  Plaintiff testified that her physical symptoms included soreness and spasms in her neck; pain in her head, neck, and back; tingling in her right hand; and carpal tunnel syndrome that "gets better and worse."  (R. 401-03, 408.)  Plaintiff is currently prescribed Naprosyn for her pain.  (R. 403.)  Prior to 2005, Plaintiff did not take any medications because she was pregnant or breast-feeding.  (R. 23.)  Plaintiff also testified that she was not being treated for any mental problems, but was taking Xanax prescribed because "she worries."  (R. 404.)  Plaintiff testified that her mental symptoms are such that it "takes [her] longer to do stuff" (R. 404), and that she has difficulty sleeping (R. 406).  Plaintiff testified that her regular activities included some cooking, light housework, light shopping, going to church,

grooming, and taking her daughter to the library.  (R. 404-11.)

Following the January 20, 2006 hearing, Judge Pachnowski found that (1) Plaintiff met the insured status requirements under the Social Security Act; (2) Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of November 18, 2003; (3) Plaintiff's cervical radiculopathy was a "severe" impairment; (4) Plaintiff's impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Act ("Listing of Impairments"); (5) Plaintiff's allegations regarding her limitations were not totally credible; (6) Plaintiff had the residual functional capacity ("RFC") to perform light work; (7) Plaintiff's past relevant work as a records clerk, substitute teacher, para-professional, and realtor did not require the performance of work-related activities precluded by her RFC; (8) Plaintiff's cervical radiculopathy did not prevent her from performing her past relevant work; and (9) Plaintiff was not under a "disability" as defined by the Social Security Act. (R. 314-19.)

The Appeals Council vacated the hearing decision and remanded the case with instructions to (1) provide Plaintiff with an opportunity to review and comment on a report from Dr. Francky Merlin subsequently admitted into the record;[2] (2) evaluate Plaintiff's mental impairments according to 20 C.F.R. § 404.1520(a); (3) further evaluate and provide a rationale for the evaluation of Plaintiff's subjective complaints; (4) further consider and provide a rationale for the decision as to Plaintiff's RFC during the entire period at issue; and (5) if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed

---

[2] Dr. Merlin's post-hearing consultative examination report was made on March 24, 2006. The Appeals Council found that Plaintiff should have been given an express time frame in which to review and comment on the report.  (R. 321-22.)

limitations on Plaintiff's occupational base.  (R. 321-23.)

Prior to Plaintiff's May 14, 2007 hearing, her attorney submitted into evidence a letter to the assigned ALJ giving Plaintiff's comments on Dr. Merlin's report.  (R. 369-70.)  At the hearing, Judge Shoemaker questioned Plaintiff as to her daily activities and past work experience.  Plaintiff testified that she drove approximately every other day in order to bring her daughter to classes, go to a job bank, and attend church services.  (R. 419-20.)  She clarified details about her past work experience in response to questions from the ALJ and the vocational expert.  (R. 421-28.)  Plaintiff declined the opportunity to give any further testimony regarding her medical condition.  (R. 439.)

A vocational expert also testified at the hearing as to the Plaintiff's vocational profile.[3]  (R. 429-38.)  He stated that Plaintiff's skills, especially as a real estate agent, were transferable to other kinds of work.  (R. 432.)  In order to assess Plaintiff's ability to perform her past work or to adjust to different work, the ALJ posed two hypothetical questions to the vocational expert based on the profile of a worker with various physical and mental limitations similar to those described by Plaintiff.  (R. 432-37.)  The vocational expert testified that the first hypothetical worker, as described by the ALJ, could not perform any of the Plaintiff's past work due to the worker's inability to follow detailed instructions.  (R. 435.)  However, the vocational expert testified that, considering Plaintiff's RFC, age, education, and work background, this first hypothetical worker could perform other sedentary, unskilled work.  (R. 437.)  The expert then considered a second

---

[3] The vocational expert classified Plaintiff's past work as a file clerk as light duty, semi-skilled work, Specific Vocational Preparation ("SVP") 3, but noted that Plaintiff's description of her duties more closely matched a sedentary exertional level.  (R. 429.)  The vocational expert classified Plaintiff's past work as a substitute teacher as light duty, SVP 7, and her past work as a para-professional as light duty, skilled work, SVP 6.  (R. 429-30.)  He classified Plaintiff's past work as a real estate agent as light duty, SVP 5.  (R. 431.)

hypothetical worker who had all of the aforementioned limitations and additionally could not stand more than twenty minutes, required a fifteen minute break every hour, and likely would miss more than three days of work each month.  The expert opined that such a worker could not perform jobs in the national economy.  (R. 438.)

Following the May 14, 2007 hearing, Judge Shoemaker concluded (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008; (2) Plaintiff had not engaged in substantial gainful activity since November 18, 2003; (3) Plaintiff's impairments due to chronic neck pain syndrome, mood disorder, and generalized anxiety disorder were severe, but Plaintiff's impairment due to cognitive disorder was not severe; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a *per se* disabling impairment  in the Listing of Impairments; (5) Plaintiff had the RFC to perform sedentary work except that she was limited with her upper extremities as far as reaching, she was unable to climb ladders or ropes or to crawl, and that she was unable to understand, remember, and carry out detailed instruction; (6) Plaintiff was not able to perform any of her past relevant work; (7) Plaintiff was a "younger individual" under 20 C.F.R. § 404.1563 at the alleged disability onset date; (8) Plaintiff had at least a high school education and was able to communicate in English; (9) Plaintiff was "not disabled" under the Medical-Vocational Rules framework and therefore transferability of job skills was not material to the disability determination; (10) considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in sufficient numbers in the national economy that Plaintiff can perform; and (11) Plaintiff was not under a disability as defined in the Social Security Act from November 18, 2003, through the date of the decision.  (R. 18-26.)

Plaintiff's request for review of the ALJ's July 31, 2007 decision was denied by the Office of Hearings and Appeals.  (R. 7-9.)  Plaintiff then filed the instant action.

DISCUSSION

A.      Standard of Review

A reviewing court must confirm the ALJ's decision where it is based on correct legal standards and its factual findings are supported by substantial evidence in the record.  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Where substantial evidence supports the Commissioner's factual findings, they must be upheld.  See 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

B.      Standard for Disability Benefits Under the Social Security Act

For purposes of the Social Security Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration employs a five-step process to determine whether an applicant is entitled to benefits.  20 C.F.R. § 404.1520; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91-92 (3d Cir. 2007).  The first step requires the Commissioner to determine if the claimant has engaged in substantial gainful activity since the onset of her alleged disability.  20 C.F.R. § 404.1520(b).  If not, the second step requires the Commissioner to determine whether the claimant's impairment is "severe."  20 C.F.R. § 404.1520(c).  If the

claimant has a severe impairment, the third step requires the Commissioner to determine whether

the impairment meets or is equal to the criteria of a "*per se* disabling" impairment as listed in

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Listing of Impairments"). 20 C.F.R. §

404.1520(d).  In the fourth step, the Commissioner determines whether, despite the severe

impairment, the claimant retains the RFC to perform her past relevant work.  20 C.F.R. §

404.1520(e)-(f).  If she does not, the fifth step requires the Commissioner to determine if the

claimant, given her medical impairments, age, education, past work experience, and RFC, can

perform other work that exists in significant numbers in the national economy.  20 C.F.R. §

404.1520(g).  The claimant bears the burden of establishing that she is disabled through the first

four steps; if the claimant carries her burden, the fifth step shifts the burden to the Social Security

Administration to show that the claimant can adjust to other work.  Poulos v. Comm'r of Soc.

Sec., 474 F.3d 88, 91-92 (3d Cir. 2007).

    C.    Commissioner's Disability Analysis

Judge Shoemaker complied with the five-step procedure promulgated by the Social

Security Administration.  See 20 C.F.R. § 404.1520.  First, the ALJ determined that Plaintiff had

not engaged in substantial gainful activity since her alleged disability onset date of November 18,

2003.  (R. 20.)  Second, the ALJ concluded that the evidence established the existence of "severe"

impairments, namely chronic neck pain syndrome, mood disorder, and generalized anxiety

disorder.  (R. 20.)  Third, the ALJ did not find Plaintiff's impairment equivalent to any impairment

in the Listing of Impairments.  (R. 20.)  Fourth, the ALJ determined that Plaintiff had the RFC to

perform sedentary work, with specific physical and mental limitations (R. 21.), and that her RFC

precluded her from performing any of her past relevant work (R. 24).  Fifth, the ALJ determined

that, considering Plaintiff's age, education, work experience and RFC, Plaintiff could adjust to other work that exists in significant numbers in the national economy, and therefore Plaintiff was not under a disability as defined in the Social Security Act.  (R. 25.)

D.     Analysis of the Commissioner's Disability Determination

On appeal, Plaintiff asserts that the ALJ erred as a matter of law because substantial evidence does not support the conclusion that Plaintiff was not under a disability during the period of time at issue.  Specifically, Plaintiff contends that the ALJ's third, fifth, tenth, and eleventh findings are not supported by substantial evidence.

1.     The ALJ's Third Finding Regarding the Severity of Plaintiff's Impairments

Judge Shoemaker found that Plaintiff's chronic neck pain syndrome, mood disorder, and generalized anxiety disorder were "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c), but that the evidence did not show Plaintiff's cognitive disorder to be severe.  (R. 20.)  The ALJ explained that, while there was an early diagnosis of cognitive disorder, Plaintiff did not receive treatment for the problem and the evidence did not show that this impairment prevented Plaintiff from performing basic work activities.  (R. 20.)  The ALJ stated that he based his assessment on the April 2003 diagnosis of cognitive disorder from Dr. Kirtley Thornton, Ph.D., and the report of a mental health assessment and psychiatric review from a Disability Determination Services ("DDS") physician dated October, 2004.  (R. 20.)

A claimant must show that her impairment or combination of impairments is "severe" in order to be found disabled.  20 C.F.R. § 404.1520(c).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities include mental

-8-

functions such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision and co-workers; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  While the claimant bears the burden of showing that her impairment is severe, she needs only to demonstrate "something beyond a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (internal quotations and citations omitted).  Any doubts as to the sufficiency of the showing of severity should be resolved in favor of the claimant.  Id.

Plaintiff was diagnosed with cognitive disorder resulting from the car accident by psychologist Dr. Thornton in April, 2003.  (R. 141.)  At the time of the diagnosis, she was given a fair prognosis for recovery of function without treatment, and was recommended to engage in an outpatient cognitive rehabilitation program.  (Id.)  A Mental Residual Functional Capacity Assessment conducted October 19, 2004 by a DDS physician stated that Plaintiff had not received any psychiatric treatment or medications to that date and concluded that Plaintiff's psychological condition "[did] not impair her ability to follow simple instructions, attend and concentrate, keep adequate pace and persist, relate and adapt to routine tasks in a work situation."  (R. 215.)  A concurrent Psychiatric Review found that Plaintiff evidenced affective disorders, namely grief reaction to her husband's recent death, and generalized anxiety.  (R. 217-30.)  A November 29, 2004 letter from Dr. Thornton stated Plaintiff had been under his care since February 2003  for "the emotional and cognitive consequences" of the car accident.  Dr. Thornton further opined that Plaintiff was fully disabled for the past year and was still disabled at the time.  (R. 236.)  Plaintiff testified at her January 20, 2006 hearing that she was not being treated for any mental problems,

but that she was taking Xanax because she "[worried] about stuff." (R. 404.) Plaintiff also testified that it "[took her] longer to do stuff" because she would "start doing it, and then stop and think, and do it again." (Id.) Plaintiff further testified that she was tested by a psychologist [Dr. Thornton], that he treated her for stress management and pain management, and that she did not see him regularly for treatment. (R. 410.) Plaintiff did not present additional evidence or testimony regarding her cognitive disorder at the May 2007 hearing.

Viewing the record in its entirety and acknowledging the *de minimis* interpretation given to the term "severe," see McCrea, 370 F.3d at 362, this Court nonetheless agrees with the ALJ that Plaintiff did not meet her burden of demonstrating that her cognitive disorder is "severe" within the meaning of the Social Security Act. Judge Shoemaker justified his finding of non-severity in part based on a lack of evidence that Plaintiff sought or received treatment. (R. 20.) He also stated that his finding was based on the lack of evidence throughout the record showing that cognitive disorder prevented Plaintiff from performing basic work activities. (R. 20.) When drawing an inference about the functional effects of an individual's symptoms from her failure to seek treatment, an adjudicator must consider the claimant's explanation for her lack of treatment and any other evidence in the record that might explain the failure to seek treatment. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003); SSR 96-7p. In this instance, this Court cannot say Judge Shoemaker's inference was inappropriate. Plaintiff did not offer an explanation or evidence as to why she did not seek treatment for cognitive disorder. Based on the scant medical evidence in the record regarding Plaintiff's cognitive disorder, and on the absence of any testimony by the Plaintiff as to how this disorder affects her ability to do basic work activities, the ALJ appropriately concluded that Plaintiff's impairment due to cognitive disorder was not severe.

2.      The ALJ's Fifth Finding Regarding Plaintiff's RFC

Judge Shoemaker found that Plaintiff had the RFC to perform sedentary work, except that she is limited with her upper extremities for reaching, she is unable to climb ladders or ropes, she is unable to crawl, and she is unable to understand, remember, and carry out detailed instructions. (R. 21.)  The ALJ's opinion thoroughly explained the evidence and testimony upon which he based his determination of Plaintiff's RFC and limitations.  (See R. 22-24.)  The ALJ noted that Dr. Bagner's physical examination report of October 19, 2004 showed that, *inter alia*, Plaintiff ambulated without difficulty, was able to get on and off the examining table and dress and undress without assistance, had no motor or sensory abnormalities in her upper extremities, and that X-rays of her spine were normal.  (R. 23.)  The ALJ acknowledged that Dr. Thornton submitted a psychological evaluation dated October 11, 2004, but explained that he afforded the evaluation little weight because it was self-reported by Plaintiff.  The ALJ afforded little weight to Dr. Thornton's November, 2004 statement that Plaintiff was fully disabled because this opinion lacked any clinical findings and failed to give any information regarding the frequency of Plaintiff's visits or any treatment rendered by Dr. Thornton.  (R. 22-23.)  In support of his finding, Judge Shoemaker also discussed several medical reports from Plaintiff's treating physician Mark Friedman, M.D., the report of consulting physician Francky Merlin, M.D., and Plaintiff's testimony regarding her daily activities.  (R. 23-24.)  The ALJ explained that he discredited Dr. Friedman's report of February 18, 2005 indicating certain physical limitations on Plaintiff's activities because this report was inconsistent with Dr. Friedman's other reports, the DDS Physical Residual Functioning Capacity Assessment, and the Medical Source Statement from Dr. Merlin. (R. 24.)  The ALJ also noted that, through early 2005, Plaintiff was not taking any medications

-11-

because she was nursing a baby, but was since prescribed Naprosyn.  (R. 23.)

When a claimant's impairment does not meet or medically equal a *per se* disabling impairment on the Listing of Impairments, the adjudicator must assess the claimant's RFC according to 20 C.F.R. §§ 404.1545, 404.1546.  20 C.F.R. § 404.1520(a)(4), (e).  RFC means "the most [a claimant] can do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  Both the claimant's physical and mental abilities are to be considered in the RFC determination.  20 C.F.R. § 404.1545(b)-(c).  Evidence to be used in assessing a claimant's RFC includes medical reports from the claimant's own sources, any statements about what the claimant can still do provided by medical sources, and descriptions and observations of the claimant's impairments provided by the claimant or other persons.  20 C.F.R. § 404.1545(a)(3).

The ALJ's findings regarding Plaintiff's RFC adequately accounted for the various medical findings in the record.  Judge Shoemaker's opinion considered numerous medical reports and appropriately determined the weight to give to the various medical opinions submitted by Plaintiff's physician and psychologist.  See 20 C.F.R. § 404.1527(d) (medical opinions will be weighed based on the examining and treatment relationship of the source to the claimant, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the source supports the opinion with relevant evidence, the consistency of the opinion with the record as a whole, the source's specialization, and any other factors brought to the adjudicator's attention).  Because substantial evidence supports the ALJ's conclusions as to Plaintiff's RFC, this Court finds that the ALJ's determination of Plaintiff's RFC was proper.

-12-

3.      The ALJ's Tenth Finding Regarding Plaintiff's Ability to Perform Other Work

If the ALJ finds that a claimant's RFC does not enable her to do any of her past relevant work experience, as in this case, the ALJ is to use the same RFC assessment to decide if the claimant can adjust to any other work that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1560(c)(1).  In analyzing whether the claimant can adjust to other work, the adjudicator is to consider the claimant's RFC and vocational factors of age, education, and work experience.  Id.

Judge Shoemaker found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in sufficient numbers in the national economy that Plaintiff could perform.  As discussed above, the ALJ properly found that Plaintiff has the RFC to perform sedentary work with specific limitations.  The ALJ noted that Plaintiff was a "younger" individual at the time of the alleged onset of her disability and had a college education.  (R. 23-24.)  At the May 14, 2007 hearing, Judge Shoemaker thoroughly questioned the vocational expert about Plaintiff's past work history.  (R. 429-32.)  The ALJ also posed hypothetical questions to the vocational expert about whether a worker with physical and mental limitations as suggested by Plaintiff's testimony and medical records could perform other jobs.  (R. 435.)  The vocational expert testified that such a hypothetical worker could perform sedentary unskilled work such as working as an addresser, a final assembler of eyeglasses, or a microfilming document preparer. (R. 435-37.)  The vocational expert also testified as to the availability of such jobs in the Ocean County and Mercer County occupational areas and nationally.  (R. 436-37.)  Judge Shoemaker found that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  (R. 25.)

The ALJ's determination that Plaintiff was "not disabled" because she could do other work that exists in significant numbers in the national economy is explained in the ALJ's opinion and supported by substantial evidence in the record as to Plaintiff's RFC, age, education, work experience, and the availability of other work of which Plaintiff would be capable.  Therefore, this Courts finds that the Commissioner sustained its burden of proving that Plaintiff can do other work.  This finding is affirmed.

       4.      <u>The ALJ's Eleventh Finding that Plaintiff Was Not Under a Disability</u>

The ALJ's final finding that Plaintiff was not under a disability, as defined by the Social Security Act, from the alleged onset date of November 18, 2003, through the July 31, 2007 date of his opinion is substantially supported by evidence in the record as discussed above.  Since Plaintiff raises no further specific allegations of error by the ALJ, this Court affirms the final decision of the Commissioner.

<u>CONCLUSION</u>

The ALJ's determination that Plaintiff is not disabled under the Social Security Act meets the substantial evidence threshold to which this Court must adhere on appeal. Therefore, the Court AFFIRMS the Commissioner's decision.

For the foregoing reasons, and for good cause shown,

IT IS on this 11th day of February, 2009

ORDERED that the decision of the Commissioner is AFFIRMED; and it is further

ORDERED that the case is CLOSED.

                             s/ Anne E. Thompson
                           ANNE E. THOMPSON, U.S.D.J.

-14-